MARTA VALDOVINOS, as Parent, Guardian, and Next Friend of Daniel Valdovinos, a Disabled Minor, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. LUNA-MANALAC MEDICAL CENTER, LTD., d/b/a Antillas Family Health Center, *et al.*, Defendants-Appellants and Cross-Appellees (Parke, Davis and Company, Defendants).

First District (4th Division)   No. 1—00—1742

Opinion filed February 21, 2002.

Pretzel & Stouffer, of Chicago (Robert M. Chemers and Scott L. Howie, of counsel), for appellants.

Stern Holstein Zimmerman & Hanson, of Chicago (Robert A. Holstein and Thomas A. Zimmerman, Jr., of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The defendants, Luna-Manalac Medical Center, Ltd. (Luna), and Dr. Julietta Luna Joson (Joson), appeal from a circuit court order al-

lowing the plaintiffs, Marta Valdovinos (Valdovinos), as parent, guardian, and next friend of Daniel Valdovinos (Daniel), and Chicago Title and Trust Company (Chicago Title), as guardian of the estate of Daniel Valdovinos, a disabled minor, to voluntarily dismiss the instant action pursuant to section 2—1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1009 (West 1996)). The plaintiffs cross-appeal from the portion of the trial court's order requiring that they pay the defendants' costs and expenses. They also seek review of various pretrial rulings. For the reasons that follow, we affirm.

This action commenced in the circuit court some 10 years ago and, despite the fact that it has never proceeded to trial, is before this court for the second time. The record consists of 105 volumes, and, needless to say, the procedural history of the case is complex. We will attempt to limit our recitation of the facts to those necessary for an adequate understanding of the case and resolution of the issues presented.

On June 6, 1991, Valdovinos, as parent and next friend of Daniel, filed the initial complaint in this action, asserting causes of action for medical negligence against various doctors and hospitals involved in her prenatal care and Daniel's birth and postdelivery care. During the course of the litigation, Valdovinos filed multiple amended complaints adding new defendants and new claims. The seventh amended complaint, the final one filed, lists as plaintiffs not only Valdovinos, in her representative capacity, but also Chicago Title, as the guardian of Daniel's estate. In that complaint, the plaintiffs alleged that, during Valdovinos' pregnancy, Joson had given her an injection of a drug manufactured by Parke Davis and that, as a result of the injection, Daniel had suffered severe neurological damage. The plaintiffs asserted, *inter alia,* a negligence claim against Luna, the medical clinic where Joson worked, and Joson, individually and as an agent of Luna, and a product liability claim against Parke Davis, which is not a party to this appeal.

On June 21, 1997, counsel for Luna and Joson issued a subpoena to Dr. Tanadori Tomita, one of the doctors who treated Daniel shortly after his birth, requiring him to appear for an evidence deposition. On July 28, 1997, the plaintiffs brought a motion to compel Dr. Tomita to speak with their attorney prior to his deposition. In that motion, the plaintiffs alleged that, in June 1997, before Dr. Tomita had retained counsel, he agreed to speak to the plaintiffs' counsel prior to his deposition but that, after retaining attorney Pamela Gellen, he refused to do so. The plaintiffs further alleged that Gellen had "engaged in discussions with counsel for Parke Davis." The plaintiffs expressed concern that the discussions between Parke Davis' counsel and Gellen were "effectively subverting prohibitions against discussions with

treating physicians" in violation of the rule pronounced in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 588, 499 N.E.2d 952 (1986). The plaintiffs sought orders prohibiting "indirect communications" between Gellen and counsel for Parke Davis and requiring Dr. Tomita to meet with their attorneys. Judge Susan Zwick denied the plaintiffs' motion that same day. Dr. Tomita's deposition was taken on July 29, 1997. Gellen represented Dr. Tomita at the deposition.

On August 18, 1997, the case was assigned to Judge Denise O'Malley for trial. Thereafter, the case was subject to extensive motion practice as the parties, in combination, filed a total of more than 100 motions *in limine*. Also, on August 19, 1997, the plaintiffs filed their fifth and sixth supplements to their answers to Supreme Court Rule 213 (177 Ill. 2d R. 213) interrogatories, in which they disclosed new witnesses and new opinions of previously disclosed witnesses.

On August 21, 1997, Judge O'Malley granted Pamela Gellen's emergency motions to quash subpoenas which the plaintiffs had issued requiring that she appear for discovery and evidence depositions and at trial. The plaintiffs contend that they issued the subpoenas in question to Gellen because, due to certain testimony Dr. Tomita gave at his deposition, they believed that Dr. Tomita had engaged in *ex parte* communications with counsel for Luna and Joson, either personally or through Gellen.

On August 28, 1997, the plaintiffs sought leave to file a seventh amended complaint. Judge O'Malley allowed the plaintiffs leave to file the complaint but subsequently ordered certain paragraphs stricken from the complaint, some with prejudice and others with leave to replead, which the plaintiffs did not do. She also ordered stricken from the complaint any reference to Warner-Lambert Company, which was named for the first time in that complaint.

On September 3, 1997, Judge O'Malley entered rulings on the objections raised during the evidence depositions of several of Daniel's treating physicians, including Dr. Tomita. The plaintiffs' counsel objected to certain of Gellen's comments being stricken from Dr. Tomita's deposition, asserting that the comments suggested Gellen had engaged in *ex parte* communications with defense counsel. Judge O'Malley stated: "We have had a ruling on this before based on *Petrillo*, I said your suspicion that *Petrillo* is violated by conversations between two lawyers and you have nothing, no real evidence whatever to support it."

On September 9, 1997, the plaintiffs first disclosed the existence of a computer-animated videotape which, they alleged, depicted the opinions of their expert witnesses. Judge O'Malley expressed doubt as to whether she would allow the tape to be presented at trial but stated

she would consider the matter overnight. On September 10, 1997, the plaintiffs filed an emergency petition for substitution of judge for cause pursuant to section 2—1001(a)(3) of the Code (735 ILCS 5/2—1001(a)(3) (West 1996)). Judge Jacqueline Cox heard and denied the petition that same day. When the parties returned to Judge O'Malley's courtroom, the plaintiffs indicated their intent to file another motion for substitution of judge for cause the following day, containing more specific allegations of bias, ill will, and prejudice. Judge O'Malley stated that she believed the plaintiffs' motions for substitution were attempts at forum shopping because they were unhappy with her rulings. She informed the parties that she was, nonetheless, contemplating recusing herself from the case but that she would consider the matter overnight. In urging Judge O'Malley not to recuse herself from the case due to the plaintiffs' tactics, counsel for Luna and Joson expressed his belief that the plaintiffs would next "pull a voluntary dismissal." The plaintiffs' counsel responded: "I guarantee that's not going to happen."

On September 11, 1997, Judge O'Malley issued over 100 written orders regarding various of the parties' motions on which she had already heard argument and ruled. By way of these orders, Judge O'Malley, *inter alia*, barred the plaintiffs from calling certain witnesses at all and from eliciting certain testimony or opinions from other witnesses due to untimely or inadequate disclosures and/or the cumulative nature of the proposed testimony. Also on September 11, 1997, the plaintiffs filed another motion for substitution of judge for cause. That motion, however, was rendered moot when Judge O'Malley recused herself from the case that same day for medical reasons. Judge O'Malley specifically declined to rule on the admissibility of the plaintiffs' videotape as demonstrative evidence, leaving the matter to be decided by the judge to whom the case was next assigned.

On September 12, 1997, the plaintiffs filed a motion for a mistrial. Judge Donald O'Connell heard and denied the motion, noting that trial had not yet commenced.

On September 19, 1997, the plaintiffs filed an action in the chancery division (docket number 97 CH 11755) naming as defendants, *inter alia*, counsel for Joson in the instant case, Dr. Tomita, and Pamela Gellen. The plaintiffs also named the attorneys representing Parke Davis in the instant case as respondents in discovery in the chancery action. The plaintiffs alleged that Dr. Tomita had refused to meet with their attorneys prior to giving his deposition in the instant action and that certain answers he gave at the deposition demonstrated that he had engaged, through Gellen, in prior *ex parte* communications with defense counsel. In count I of the complaint, the plaintiffs sought a

mandatory injunction ordering Dr. Tomita to meet with their attorneys prior to giving his deposition in the instant case. In count II, the plaintiffs alleged a cause of action for conspiracy to commit and the actual commission of "outrageous tortious conduct" against Dr. Tomita, Gellen, counsel for Luna and Joson, and others. In their prayer for relief on count II, the plaintiffs sought orders: prohibiting, *inter alia*, Gellen and the defendants' attorneys from communicating with Daniel's treating physicians, including Dr. Tomita, either directly or indirectly through counsel; enjoining Dr. Tomita from communicating with anyone regarding Daniel's medical treatment, either directly or indirectly through counsel, without the plaintiffs' consent; impounding the evidence deposition given by Dr. Tomita in the instant case and restraining the parties in this case from offering the deposition; barring Dr. Tomita from testifying in the instant case due to *Petrillo* violations; and disqualifying certain of the defendants' attorneys in the instant case.

After Judge O'Malley's recusal, the instant case was assigned to Judge Virgilio for trial. The plaintiffs filed a motion seeking *de novo* review of all the motions *in limine* upon which Judge O'Malley had ruled, asserting that false statements made to Judge O'Malley by counsel for the defendants had resulted in "patently erroneous" rulings. On September 22, 1997, the plaintiffs filed an emergency motion to stay the proceedings in the instant case so that they could proceed with a motion for a preliminary injunction and discovery on an expedited basis in their newly filed chancery action. The plaintiffs asserted that the allegations in the chancery action provided grounds to disqualify counsel for the defendants in the instant case and to bar certain witnesses from testifying in the instant case. Accordingly, they argued, if the chancery division action proved successful, any judgment in the instant case would have to be set aside as void as it would be "based upon illegally obtained evidence." Also on September 22, 1997, Luna and Joson filed a motion to bar the plaintiffs from using the computer-animated videotape. The following day, Parke Davis filed a motion to the same effect.

On September 22, 1997, Judge Virgilio denied the plaintiffs' motion to stay the proceedings. On September 23, 1997, the plaintiffs presented that same motion to Judge O'Connell. Judge O'Connell denied the motion, noting that all of the relevant relief sought in the chancery action could be sought in the instant action. After denying the plaintiffs' motion, Judge O'Connell commented: "I'd say further, the plaintiffs, if you're not ready to try the case, take a voluntary dismissal. Relief is available to you. *** [I]f you're not ready to try this case, you have the tools available." Counsel for the plaintiffs responded: "We're—we're ready. We're ready for trial."

On September 25, 1997, Judge Virgilio reversed Judge O'Malley's denial of one of the plaintiffs' motions *in limine* but left undisturbed the remainder of Judge O'Malley's rulings, stating that they were not "patently incorrect." Further, Judge Virgilio granted the defendants' motions to bar the plaintiffs from using the videotape as demonstrative evidence at trial. After Judge Virgilio issued these rulings, he asked the parties whether they had any questions they wished him to ask the jurors during *voir dire*. One of the attorneys for the plaintiffs informed the judge that his cocounsel, who was not present in court at that time, was bringing the questions and should be arriving shortly. Cocounsel arrived shortly thereafter and stated:

"Your Honor, when we appeared before Judge O'Connell earlier this week after we were first with you, then we moved for a—we gave them the motion for a stayed order. He, at that time, said that you could give us that relief.

And since you had already denied the motion, he also suggested that we take a voluntary nonsuit since we have a minor, and we're going to do that, your Honor. I have a motion for voluntary nonsuit."

Counsel presented Judge Virgilio with a written motion to voluntarily dismiss the case without prejudice. The defendants objected, arguing, among other things, that they had not been given notice of the motion. Judge Virgilio gave the defendants leave to file responses to the motion and continued the matter to the next day, ordering that the plaintiffs make several modifications to their written motion. Later that day, the plaintiffs filed a pleading styled "Plaintiffs' Revised Motion for a Voluntary Dismissal Without Prejudice," reflecting the changes which Judge Virgilio had ordered. In the revised motion, the plaintiffs asserted that they were seeking a voluntary dismissal because both Judge Virgilio and Judge O'Connell had denied their motion to stay proceedings in the case pending expedited discovery in the chancery action, an action which the plaintiffs alleged would "materially affect" this action.

On September 26, 1997, Parke Davis filed its written objections to the plaintiffs' motion to voluntarily dismiss the case without prejudice. Joson and Luna also filed a memorandum in opposition to the plaintiffs' motion. When the matter was heard on September 26, Judge Virgilio granted the revised motion for a voluntary dismissal pursuant to section 2—1009 of the Code. The order granting the voluntary dismissal also provided that "the plaintiff is ordered to pay all costs associated with this case including the costs incurred by the defendants in the taking of depositions and those other costs as provided for in *Galowich v. Beech Aircraft Corp.*, 93 Ill. App. 3d 690, reversed on

other grounds 92 Ill. 2d 157 (1981)." The order did not state the amount of costs to be paid or specify which of the plaintiffs was to make the payment.

On October 21, 1997, Judge Virgilio, *inter alia,* ordered the parties to provide briefs "regarding Illinois Supreme Court Rule 219(e)" (166 Ill. 2d R. 219(e)). On October 27, 1997, Parke Davis filed a brief in support of its petition for costs, in which it also requested that the trial court reconsider its September 26, 1997, order granting a voluntary dismissal without prejudice. Also on October 27, 1997, the plaintiffs filed a motion to vacate the trial court's September 26, 1997, order and a motion seeking an assessment of fees and costs pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The record is void of any indication that the plaintiffs' Rule 137 motion was ever noticed for hearing or ruled upon by the trial court.

On November 12, 1997, the parties appeared before the court. On that date, Judge Virgilio orally informed the parties that the motion to vacate the voluntary dismissal without prejudice was denied. That same day, Judge Virgilio entered a written "Memorandum and Order" in which he found that the "plaintiff" had "abused section 2—1009" and "violated Supreme Court Rule 219(e)" and set the amount of costs to be paid at $117,059.41. An exhibit attached to the court's order indicates that, of the $117,059.41 awarded, $37,886.27 was due to Parke Davis and $79,173.14 was due to Luna and Joson. Like the September 26, 1997, order, this order does not state which plaintiff is required to pay the assessed costs.

On November 26, 1997, Parke Davis, Luna, and Joson filed a joint motion requesting that the court vacate its September 26, 1997, order granting the plaintiffs' motion for a voluntary dismissal and resume the trial of the cause as costs had not been paid or, in the alternative, that it dismiss the case "with prejudice." Judge Virgilio denied the motion on December 11, 1997. During the hearing on December 11, the attorney representing Joson and Luna asked the court for clarification as to who was responsible for the payment of the costs awarded on November 12. Judge Virgilio declined to decide the matter, indicating his belief that another tribunal, such as the probate court or this court, should determine who was responsible for paying costs.

Between October 24, 1997, and January 28, 1998, the plaintiffs and all three defendants filed numerous notices of appeal and cross-appeal under various docket numbers. In an opinion issued on September 2, 1999, we dismissed all of the appeals and cross-appeals for a lack of jurisdiction, concluding that none of the various orders from which the parties appealed were final orders, and remanded the case to the circuit court. *Valdovinos v. Luna-Manalac Medical Center,*

*Ltd.*, 307 Ill. App. 3d 528, 718 N.E.2d 612 (1999). In relevant part, we held that the trial court's orders granting the plaintiffs' motion for a voluntary dismissal and assessing costs were not capable of enforcement, and thus not final orders, as the trial court assessed costs against the "plaintiff" but did not specify which of the two plaintiffs was to pay.

On remand, on January 5, 2000, Parke Davis filed a motion to assign the case to a trial judge "to correct the orders involved in the voluntary dismissal and rule on the motions for sanctions pursuant to the opinion of the appellate court." The case was assigned to Judge Susan Zwick, who set a briefing schedule for the motion. On April 3, 2001, the plaintiffs filed a single pleading which included their response to Parke Davis' motion and their own motion for reconsideration of Judge Virgilio's order awarding expenses pursuant to Rule 219(e). That same day, Luna and Joson filed a memorandum of law in support of Judge Virgilio's prior rulings.

On April 21, 2000, Judge Zwick issued a memorandum opinion and order in which she denied the plaintiffs' motion to reconsider Judge Virgilio's order assessing costs and granted Parke Davis' motion to correct Judge Virgilio's November 12, 1997, order. Judge Zwick's order provided, in part, as follows:

> "(3) The court's order of November 12, 1997, including the provision granting Plaintiff's motion pursuant to 735 ILCS 5/2—1009, and its specific findings pursuant to Supreme Court Rule 219(e), is adopted, incorporated and made a part of this court's order;
>
> (4) The Plaintiffs, Marta Valdovinos, in her representative capacity only, as guardian of the person, and next friend of Daniel Valdovinos, and Chicago Title and Trust Company, in it's [*sic*] representative capacity only, as guardian of the Estate of Daniel Valdovinos, a disabled minor are ordered to pay the defendants costs and other expenses in the amount of $117,059.41."

The order also contained Rule 304(a) (155 Ill. 2d R. 304(a)) language of finality and appealability.

On May 17, 2000, the plaintiffs filed a motion to reconsider Judge Zwick's April 21 order. On May 19, Luna and Joson filed a notice of appeal, docketed under number 1—00—1742, from, *inter alia*, Judge Virgilio's September 26, 1997, and November 12, 1997, orders and Judge Zwick's April 21, 2000, order. On May 23, 2000, Judge Zwick denied the plaintiffs' motion for reconsideration. Thereafter, on June 6, 2000, Luna and Joson filed an additional notice of appeal under

docket number 1—00—1742. On June 8, 2000, the plaintiffs filed a notice of cross-appeal.[1]

■ As a preliminary matter, we note that the notice of appeal filed by Luna and Joson on May 19, 2000, prior to the trial court's May 23, 2000, ruling on the plaintiffs' motion for reconsideration of its April 21, 2000, order, was premature and did not vest this court with jurisdiction. *In re Marriage of Cynthia Kay Uphoff*, 99 Ill. 2d 90, 95, 457 N.E.2d 426 (1983). Their second notice of appeal, filed on June 6, 2000, and the plaintiffs' notice of cross-appeal, filed on June 8, 2000, were, however, timely and vest this court with jurisdiction. We further wish to clarify that our jurisdiction over the instant case is pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)), as Luna and Joson assert, rather than Rule 301 (155 Ill. 2d R. 301), as the plaintiffs assert. This is because, at the time the notice of appeal and cross-appeal were filed, the plaintiffs' motion for sanctions pursuant to Rule 137 remained pending. See *Valdovinos*, 307 Ill. App. 3d at 537-38.

■ We now turn to the merits of the defendants' appeal. The defendants argue that the trial court erred in granting the plaintiffs' motion to voluntarily dismiss the case. Section 2—1009(a) of the Code of Civil Procedure provides:

"The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 ILCS 5/2—1009 (West 1996).

When a party complies with the requirements of section 2—1009, her right to a dismissal without prejudice is, with very limited exceptions, unfettered. *Morrison v. Wagner*, 191 Ill. 2d 162, 165, 729 N.E.2d 486 (2000).

■ We first address the argument, raised by the defendants, that the plaintiffs were not entitled to a voluntary dismissal as of right because trial had already commenced. The argument is without merit.

The Illinois Supreme Court's decision in *Kahle v. John Deere Co.*, 104 Ill. 2d 302, 472 N.E.2d 787 (1984), is instructive. In *Kahle*, the defendant argued that the trial court erred in allowing the plaintiff to voluntarily dismiss her case without prejudice. It asserted that trial had already begun as, on the day trial was set to begin and before the plaintiff moved for voluntary dismissal without prejudice, the trial

---

[1]Parke Davis also filed notices of appeal docketed in this court as numbers 1—00—1741 and 1—00—2114, from which the plaintiffs filed notices of cross-appeal. Those appeals, however, have been dismissed pursuant to a settlement agreement between the parties.

court had spent several hours ruling on motions *in limine*. Our supreme court rejected the argument, noting that motions *in limine* are not part of the trial. *Kahle*, 104 Ill. 2d at 307, 309. The court concluded trial had not yet begun where "no jury had been selected; no prospective jurors had been examined or sworn; and counsel had made no opening statement." *Kahle*, 104 Ill. 2d at 309.

The defendants argue that the instant case is distinguishable from *Kahle* in several respects. They point out that the plaintiff in *Kahle* moved for voluntary dismissal without prejudice on the date the trial was set to begin after the trial court had spent only a few hours ruling on pretrial motions. In contrast, they assert, the plaintiffs here moved for a voluntary dismissal without prejudice six weeks after the case was assigned out for trial and after the court had ruled on more than 100 motions. The fact, however, that the trial court in the instant case had issued far more pretrial rulings than did the trial court in *Kahle* does not change the principle, as stated in *Kahle*, that pretrial motion practice is not part of the trial itself. In further support of their assertion that the trial had begun, the defendants cite to statements made by attorneys for each of the parties and the trial judge to the effect that the case was "on trial." The question of whether a trial or hearing has begun within the meaning of section 2—1009 of the Code is a legal one. *Baird v. Adeli*, 214 Ill. App. 3d 47, 52, 573 N.E.2d 279 (1991). The terminology used by the parties and the trial judge in the instant case is of no import in answering the question. At the time the plaintiffs moved for voluntary dismissal here, jury selection had not yet begun. As such, trial had not started.

■ The defendants next assert that the plaintiffs waived their right to seek a voluntary dismissal by virtue of their prior assurances to the court and parties that they would not do so. Waiver is defined as the "voluntary relinquishment of a known right, claim or privilege." *Vaughn v. Speaker*, 126 Ill. 2d 150, 161, 533 N.E.2d 885 (1988).

On September 10, 1997, when Judge O'Malley informed the parties that she was considering recusing herself from the case, defense counsel expressed a belief that the plaintiffs would voluntarily dismiss their action. Counsel for the plaintiffs responded: "I guarantee that's not going to happen." On September 23, 1997, Judge O'Connell heard and denied the plaintiffs' motion to stay the proceedings in the instant case pending expedited discovery in the chancery action. Judge O'Connell told the plaintiffs that, if they were unprepared to try the case, they could voluntarily dismiss it. Plaintiffs' counsel stated: "We're—we're ready. We're ready for trial." It is upon these comments that the defendants base their claim that the plaintiffs waived their right to voluntarily dismiss the case without prejudice. We dis-

agree. On each of the dates in question, the plaintiffs, through their counsel, indicated that they had no present intention of voluntarily dismissing their case. There is no indication, however, that they intended to, or did in fact, relinquish their statutory right to do so if they should so choose.

■ We next address the defendants' argument that the trial court erred in granting the plaintiffs' motion for a voluntary dismissal without prejudice because the plaintiffs did not comply with all of the requirements of section 2—1009 of the Code. Pursuant to section 2—1009, three requirements must be met in order for a plaintiff to voluntarily dismiss her case without prejudice as of right: (1) the plaintiff must move for the voluntary dismissal prior to the beginning of trial or hearing; (2) the plaintiff must give proper notice; and (3) the plaintiff must pay costs. 735 ILCS 5/2—1009 (West 1996); *Vaughn v. Northwestern Memorial Hospital*, 210 Ill. App. 3d 253, 257, 569 N.E.2d 77 (1991). This court has held that the failure to comply with any of the three requirements can deprive the plaintiff of her right to voluntarily dismiss her case. See *Lewis v. Collinsville Unit No. 10 School District*, 311 Ill. App. 3d 1021, 1027-28, 725 N.E.2d 801 (2000) (reversing grant of motion for voluntary dismissal and remanding for new hearing on motion where plaintiff had not given proper notice prior to *ex parte* hearing); *Vaughn*, 210 Ill. App. 3d 253; *Crawford v. Schaeffer*, 226 Ill. App. 3d 129, 590 N.E.2d 497 (1992) (reversing grant of motion for voluntary dismissal and remanding for determination as to whether plaintiff gave requisite notice); *contra Metcalfe v. St. Elizabeth's Hospital*, 160 Ill. App. 3d 47, 54, 513 N.E.2d 12 (1987) (affirming grant of motion for voluntary dismissal absent notice where no prejudice to defendants).

■ It is undisputed that the plaintiffs did not give the defendants the requisite notice of their motion to voluntarily dismiss the case without prejudice. They gave, in fact, no notice. Further, the plaintiffs have not paid the defendants $79,173.14, their share of the costs and expenses awarded by the trial court. Luna and Joson argue that the plaintiffs were not entitled to voluntarily dismiss their case without prejudice for this reason. We cannot agree.

In *Mizell v. Passo*, 147 Ill. 2d 420, 428-29, 590 N.E.2d 449 (1992), our supreme court affirmed the grant of a motion for voluntary dismissal without prejudice despite the fact that the plaintiff had not given notice or tendered costs. The court concluded that, where the defendant had been given a short recess to review the motion and an opportunity to present argument thereon and the trial court's order granting the voluntary dismissal required that the plaintiff pay costs, no prejudice had resulted. *Mizell*, 147 Ill. 2d at 428-29. Similarly, the

defendants here were given an opportunity to respond to the plaintiffs' motion despite the lack of notice, and the trial court's order granting the plaintiffs a voluntary dismissal without prejudice requires that they pay costs and expenses to the defendants. We fail to see how the defendants have been prejudiced. In accordance with *Mizell*, we decline to reverse the trial court's order granting the plaintiffs' motion for voluntary dismissal based upon the plaintiffs' failure to strictly comply with the requirements of section 2—1009.

■ Finally, we address the defendants' argument that the plaintiffs were not entitled to voluntarily dismiss their case without prejudice because their motives for doing so were improper. The plaintiffs, they contend, engaged in forum shopping and dilatory tactics all along, culminating with their motion for a voluntary dismissal without prejudice after the trial court made evidentiary rulings not in their favor. Where the plaintiffs attempt to use section 2—1009 in such a flagrantly abusive manner, the defendants argue, a court is not required to, and indeed must not, grant a motion for voluntary dismissal without prejudice. This argument, too, lacks merit.

As our supreme court stated recently in *Morrison v. Wagner*, 191 Ill. 2d 162, 165, 729 N.E.2d 486 (2000):

"[S]ection 2—1009(a) of the Code of Civil Procedure, by its terms, confers on plaintiffs an unfettered right to voluntarily dismiss their claims without prejudice, upon proper notice and payment of costs, 'at any time before trial or hearing begins.' That provision, however, is subject to two qualifications. First, where a previously filed defense motion could result in a final disposition of the cause of action if ruled upon favorably by the court, the court has the discretion to hear and decide that motion before ruling on the plaintiff's motion for voluntary dismissal. 735 ILCS 5/2—1009(b) (West 1998). Second, where the circumstances of the case are such that dismissal under section 2—1009 would directly conflict with a specific rule of this court, the terms of the rule take precedence. *Catlett v. Novak*, 116 Ill. 2d 63, 69 (1987); *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273 (1986)."

In the instant case, there was no potentially dispositive motion pending at the time the plaintiffs moved for voluntary dismissal without prejudice.[2] Nor does the plaintiffs' exercise of their right to a section 2—1009 voluntary dismissal without prejudice conflict with any supreme court rule. As our supreme court held in *Morrison*, Rule

---

[2]After the plaintiffs moved to voluntarily dismiss the action, Parke Davis filed a motion for summary judgment, in which Luna and Joson subsequently joined. The trial court, however, declined to rule on the motion before granting the plaintiffs' motion for a voluntary dismissal.

219(e) does not restrict a plaintiff's right to voluntarily dismiss his case without prejudice pursuant to section 2—1009. *Morrison*, 191 Ill. 2d at 166-67. Accordingly, the plaintiffs' right to voluntarily dismiss their case was absolute, and the trial court properly granted the motion.

We now turn to the plaintiffs' argument, raised in their cross-appeal, that the trial court erred in ordering them to pay Luna and Joson costs and expenses in the amount of $79,173.14.

■ The plaintiffs first argue that the trial court erred in assessing the defendants' litigation expenses as "costs" pursuant to section 2—1009 of the Code, which, they assert, authorizes only an award of court costs. In support of this contention, the plaintiffs rely on *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 441 N.E.2d 318 (1982), in which our supreme court held that deposition expenses cannot be taxed as costs pursuant to section 2—1009. As the plaintiffs acknowledge, after our supreme court issued its decision in *Galowich*, it amended Supreme Court Rule 219 by adding paragraph (e) thereto. Rule 219(e) provides that: "The court may, in addition to the assessment of costs, require the party voluntarily dismissing a claim to pay an opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, opinion witness fees, reproduction costs, travel expenses, postage, and phone charges." 166 Ill. 2d R. 219(e). The plaintiffs acknowledge that deposition costs and other expenses can be awarded pursuant to Rule 219(e) but apparently argue that the trial court awarded expenses not as a Rule 219(e) "expense" but as a section 2—1009 "cost" in contravention of *Galowich*.

■ We agree with the plaintiffs that there is a distinction between section 2—1009 "costs" and Rule 219(e) "expenses." The text of Rule 219(e) itself states that the "reasonable expenses" for which it provides may be awarded "in addition to the assessment of costs." 166 Ill. 2d R. 219(e). It is true that the trial court, in its September 26, 1997, and November 12, 1997, orders provided that the plaintiff was to pay "costs." The trial court, however, ordered the parties to file briefs on the issue of Rule 219(e) expenses and stated in its November 12, 1997, order that the plaintiff had "violated Supreme Court Rule 219(e)." Further, in its April 21, 2000, order, the trial court ordered that the plaintiffs pay "costs and other expenses in the amount of $117,059.41." Accordingly, the plaintiffs' argument that the deposition costs and other expenses were assessed pursuant to section 2—1009 is meritless.

■ The plaintiffs also argue that the trial court erred in assessing Rule 219(e) expenses against them. As stated in the committee com-

ments to Rule 219, paragraph (e) is designed to address "the use of voluntary dismissals to avoid compliance with discovery rules or deadlines, or to avoid the consequences of discovery failures, or orders barring witnesses or evidence." 166 Ill. 2d R. 219(e), Committee Comments. In *Scattered Corp. v. Midwest Clearing Corp.*, 299 Ill. App. 3d 653, 659, 702 N.E.2d 167 (1998), this court held:

> "Based upon the language of Rule 219(e) and illumination from the Committee Comments, we find that Rule 219(e)'s reference to voluntary dismissals taken to 'avoid compliance' with 'discovery deadlines, orders or applicable rules' (166 Ill. 2d R. 219(e)) requires the circuit court to make a preliminary finding of misconduct, analogous to the 'unreasonable noncompliance' standard invoked in Rule 219(c) cases (166 Ill. 2d R. 219(c)), before imposing expenses pursuant to Rule 219(e). [Citation.] To determine whether the noncompliance is unreasonable, the standard is whether the conduct of the noncomplying party shows a deliberate, contumacious or unwarranted disregard for the court's authority. [Citation.]"

The plaintiffs contend that they did not voluntarily dismiss this case to avoid the effect of their own noncompliance with discovery deadlines or orders but that they did so to correct procedural or technical defects. In their revised motion for a voluntary dismissal without prejudice, the plaintiffs asserted that they were dismissing the case because the trial court had denied their motions to stay the instant case pending expedited discovery in the chancery action. In their brief, the plaintiffs assert they exercised their right to a voluntary dismissal not only because the trial court refused to provide them with a forum to "air the truth about the *Petrillo* violations," but also because, during pretrial motions, the trial court struck Warner-Lambert Company from the caption of the case, thus removing a necessary party from the lawsuit.

Contrary to the plaintiffs' assertion, we do not believe that the trial judge was bound to accept their proffered reason for voluntarily dismissing the case. In his November 12, 1997, order, Judge Virgilio stated in relevant part as follows:

> "The applicability of the rule [Rule 219] to the plaintiff is clear. Time and time again, the plaintiff has brought many of the same or similar motions before different judges, including but not limited to Judge Cox, Judge Zwick, Judge O'Malley, Judge O'Connell and this court. The plaintiff even filed an action in the Chancery Division in an attempt to correct his perceived 'procedural or technical defects.' Only after Judge O'Connell told the plaintiff he was on trial and this court reaffirmed the motions in limine and barred the video did the plaintiff indicate he would voluntarily dismiss the

case. \*\*\* Only at the last minute, when it was clear that certain rulings would not be entered in the plaintiff's favor, did the plaintiff decide to seek a dismissal.

Clearly, the plaintiff has abused section 2—1009 and has violated Supreme Court Rule 219(e)."

It is clear from these comments that Judge Virgilio based his assessment of expenses on his conclusion that the plaintiffs sought the voluntary dismissal in order to avoid his orders reaffirming Judge O'Malley's pretrial rulings, many of which barred the plaintiffs from presenting certain witnesses or evidence due to untimely disclosure, and barring the plaintiffs from using at trial the computer-animated videotape which they first disclosed several weeks prior to trial. The record not only amply supports the trial court's finding in this regard, it dispels any other possible finding. There is no question that the assessment of expenses pursuant to Rule 219(e) was proper in the instant case, where the plaintiffs exercised their right to voluntarily dismiss the action without prejudice in order to avoid the effects of pretrial evidentiary rulings based on their own failure to comply with discovery deadlines.

The plaintiffs alternatively assert that the trial court's order assessing Rule 219(e) expenses against them is unconstitutional. The plaintiffs correctly note that, at the time this case was filed in 1991, paragraph (e) of Rule 219 was not yet in existence. They assert that, upon filing the case, they obtained a vested right to dismiss the case without prejudice upon payment of only section 2—1009 costs. The plaintiffs argue that paragraph (e) of Rule 219, which became effective on January 1, 1996, at least as applied to the instant case, constitutes a retroactive law as it interferes with this vested right. We disagree.

■ It is well settled that the legislature is without constitutional authority to enact a law that is retroactive in nature (*First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 290, 664 N.E.2d 36 (1996)), and we do not question the plaintiffs' assertion that the same limitation applies with respect to supreme court rules. It is also, however, settled that an amendment is retroactive only if it takes away or impairs a vested right or imposes a new obligation or duty or attaches a new disability with respect to transactions already past. *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291, 295, 710 N.E.2d 827 (1999).

■ Our supreme court has defined a vested right alternatively as "an expectation that is so far perfected that it cannot be taken away by legislation" and "a complete and unconditional demand or exemption that may be equated with a property interest." *First of America Trust Co.*, 171 Ill. 2d at 290-91. There is no vested right in the mere continuance of a law. *Envirite Corp. v. Illinois Environmental Protec-*

*tion Agency,* 158 Ill. 2d 210, 215, 632 N.E.2d 1035 (1994). We agree with the defendants that the plaintiffs did not, upon the filing of their case, acquire a vested right to dismiss their case upon payment of only section 2—1009 costs. As such, the application of Rule 219(e) to the instant case does not implicate constitutional concerns.

In a final attempt to obtain a reversal of the trial court's award of Rule 219(e) expenses, the plaintiffs remind this court of its duty to act in the best interests of Daniel, a disabled minor. It has often been stated that the courts are under a duty to protect the interests of a minor or disabled person who is a party to judicial proceedings before it. See *Tymony v. Tymony,* 331 Ill. 420, 163 N.E. 393 (1928); *City of Chicago v. Chicago Board of Education,* 277 Ill. App. 3d 250, 260, 660 N.E.2d 74 (1995); *Brandon v. DeBusk,* 85 Ill. App. 3d 645, 648, 407 N.E.2d 193 (1980) (reversing order dismissing minor plaintiff's petition to vacate an order dismissing his action for failure to comply with discovery and remanding to circuit court to determine whether any lesser sanctions might be appropriate). We are mindful of the fact that the Rule 219(e) expenses awarded must be paid out of Daniel's estate, which, the plaintiffs inform us, already contains funds woefully inadequate to meet Daniel's extensive needs. The duty to protect the interests of minors and the disabled does not, however, lie solely with the courts. In the instant case, Daniel was represented by guardians of both his person and his estate. During the course of the proceedings, various of the trial judges presiding over the case informed the plaintiffs' counsel that the trial tactics they were employing were questionable. This brought about no noticeable change in counsel's conduct. The plaintiffs made the decision to seek a voluntary dismissal with full knowledge of the costs and expenses that could potentially be assessed. Rule 219(e) provides no exception for cases where the plaintiff is the estate of a minor or disabled person. See *Hoffman v. Central National Bank in Chicago,* 130 Ill. App. 2d 246, 252, 264 N.E.2d 711 (1970) (refusing to excuse guardian of the minor's estate and person from posting bond for costs). In light of the purpose for which the plaintiffs exercised their right to voluntarily dismiss this action, we cannot say that the trial court abused its discretion in assessing Rule 219(e) expenses.

The plaintiffs assert that, if we do find that Rule 219(e) is applicable in the instant case, we must at least remand to the trial court for a hearing regarding the reasonableness of the expenses and costs awarded. We disagree.

On October 21, 1997, the trial court ordered the parties to file briefs on the issue of Rule 219(e) expenses. During oral argument, counsel for Luna and Joson asserted that his clients had filed such a

petition, seeking far in excess of the $79,173.14 which the trial court ultimately awarded them. Counsel has provided us with no record citation for this petition, and we have been unable to locate the petition in the voluminous record. The plaintiffs' counsel, however, did not contest the fact that Luna and Joson filed such a petition. It is unclear to us whether the trial court heard argument on the issue of Rule 219(e) expenses or took the issue under advisement on the parties' briefs alone. During oral argument before this court, counsel for Luna and Joson asserted that the court heard argument but, once again, we have been provided with no record citation and have been unable to locate the transcript of any such argument. At any rate, during oral argument before this court, the plaintiffs' counsel conceded that the plaintiffs did not, before the trial court, raise objections to any specific expenses sought by the defendants but, rather, only objected generally to the assessment of Rule 219(e) expenses.

The parties have obviously provided us with a less than clear picture of the procedural steps leading to the entry of Judge Virgilio's November 12, 1997, order, setting forth the amount of Rule 219(e) expenses to be assessed, which order was later adopted by Judge Zwick and incorporated into her April 21, 2000, order. We do, however, know that the parties were given an opportunity to brief the issue and that the plaintiffs made no objections as to any specific expense or category of expenses sought by the defendants. We also know that the trial court ultimately awarded the defendants significantly less than the amount they were seeking. All of these facts belie the plaintiffs' assertion that the trial court assessed expenses without inquiring into or allowing the plaintiffs an opportunity to challenge the reasonableness of those expenses.

■ As part of their cross-appeal, the plaintiffs also ask this court to review various trial court rulings quashing depositions, striking portions of their complaint, barring certain evidence and testimony, and granting and denying certain motions *in limine*. The plaintiffs sought review of these same interlocutory orders the first time this case was before us. As we stated at that time, we lack jurisdiction to review the interlocutory orders in question as none of the orders constituted a procedural step leading to the trial court's orders granting a voluntary dismissal and assessing Rule 219(e) expenses. See *Valdovinos*, 307 Ill. App. 3d at 537-38; *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 718 N.E.2d 191 (1999); *Hough v. Kalousek*, 279 Ill. App. 3d 855, 863-64, 665 N.E.2d 433 (1996); *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 135-40, 650 N.E.2d 245 (1995).

For the foregoing reasons, we affirm the trial court's orders granting the plaintiffs' motion to voluntarily dismiss the action without

prejudice pursuant to section 2—1009 of the Code and requiring that the plaintiffs pay the expenses of Luna and Manalac, in the sum of $79,173.14, pursuant to Rule 219(e).

Affirmed.

HARTMAN and THEIS, JJ., concur.