2022 IL App (1st) 210372-U
No. 1-21-0372

FIRST DIVISION
October 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY FSB, d/b/a CHRISTIANA TRUST, not in its individual capacity but solely as trustee for the Brougham Fund II Trust, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2018 CH 11171 |
| | ) | |
| ROBERT W. SCHRADER, | ) | |
| | ) | |
| Defendant-Appellant. | ) ) ) | Honorable William B. Sullivan, Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We lack jurisdiction to consider defendant's challenge to the September 2020 non-final order reversing a prior dismissal order in defendant's favor. However, we affirm the January 2021 order granting plaintiff's motion for voluntary dismissal, and the denial of defendant's motion to reconsider the voluntary dismissal order.

¶ 2    In this mortgage foreclosure action, defendant-appellant Robert W. Schrader appeals from

the trial court's September 2020 order granting plaintiff-appellee's motion to reconsider a January

2020 order dismissing the action with prejudice. Defendant also appeals the trial court's January 2021 order granting plaintiff's motion to voluntarily dismiss the action and the denial of defendant's subsequent motion to reconsider the voluntary dismissal. For the following reasons, we conclude that we lack jurisdiction to consider the non-final September 2020 order denying defendant's motion to reconsider. However, we affirm the trial court's January 2021 order granting plaintiff's motion for voluntary dismissal and the denial of defendant's motion to reconsider the voluntary dismissal order.

¶ 3       BACKGROUND

¶ 4       On September 4, 2018, plaintiff filed the original complaint. The caption identified plaintiff as "Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in it's [sic] individual capacity but solely as the trustee for the Brougham Fund I Trust."

¶ 5       The original complaint attached a mortgage dated January 12, 2001 that identified the lender as Washington Mutual Bank, FA and identified defendant as the borrower. The mortgage recited that defendant owed Washington Mutual Bank, FA the principal sum of $232,500, evidenced by a note executed on the same date.

¶ 6       Also attached to the original complaint was a "Lost Note Affidavit" in which Natalie Owens, an officer of BSI Financial Services, attested she searched for the note and could not locate it. The affidavit attached a copy of the note, which identified Washington Mutual Bank, FA as the "Lender". The copy of the note included a number of allonges reflecting that the note was endorsed at different times to JP Morgan Chase Bank NA, EMC Mortgage LLC f/k/a EMC Mortgage Corporation, and Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund Trust (PrimeStar).

¶ 7        The First Motion to Dismiss

¶ 8        On March 27, 2019, defendant filed a "Combined Motion to Dismiss" the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018) and Supreme Court Rule 113. (Ill. S. Ct. R. 113 (eff. July 1, 2018). Defendant urged that the complaint's failure to attach any endorsement of the note to plaintiff rendered it defective. Defendant otherwise argued that, pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)), the endorsement of the note to a non-party, PrimeStar, was "affirmative matter" establishing that plaintiff was not the holder of the note. On March 28, defendant amended his motion, adding an argument that the complaint was subject to dismissal under section 2-619(a)(2) for lack of "legal capacity to sue," as plaintiff was not the holder of the note. 735 ILCS 5/2-619(a)(2) (West 2018).

¶ 9        On April 17, 2019, the trial court granted the motion to dismiss in an order specifying that the lost note affidavit was "defective" and "does not link to the correct Plaintiff." In the same order, the court recognized that the note was endorsed to PrimeStar but not to plaintiff. The trial court allowed plaintiff 28 days to replead.

¶ 10       Plaintiff filed a motion to reconsider the April 17, 2019 order. In that motion, plaintiff argued that there was "no reason" why the "rightful owner's interest in a lost instrument cannot be transferred or assigned irrespective of allonge." However, plaintiff acknowledged there was a "scrivener's error" insofar as the lawsuit identified plaintiff as trustee of the "Brougham Fund *I Trust*" instead of the "Brougham Fund *II Trust*." (Emphases in original). Plaintiff requested leave to amend to correct that error.

¶ 11    On July 8, 2019, defendant responded to plaintiff's motion to reconsider. Defendant reiterated his position that plaintiff lacked standing and also argued that the misidentification of the plaintiff as trustee for "Brougham Fund I Trust" could not be excused as a scrivener's error. On August 13, 2019, the court denied the motion to reconsider and granted plaintiff 21 days to file an amended complaint.

¶ 12    Amended Complaint and Lost Note Affidavit

¶ 13    On August 29, 2019, plaintiff filed an amended complaint, which corrected plaintiff's name to "Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in it's [sic] individual capacity but solely as the trustee for the Brougham Fund *II Trust*." (Emphasis added). The amended complaint attached the mortgage and a new lost note affidavit executed by Cheryl Mallory.

¶ 14    In the affidavit, Mallory identified herself as an "AVP for BSI Financial Services," the "servicing agent for the subject loan." She attested she had searched the records of BSI for the note, and that its whereabouts could not be determined. She further attested that "JPMorgan Chase Bank, NA, which acquired EMC Mortgage LLC was in possession of the Promissory Note and entitled to enforce it at the time that the Note was lost." Mallory further averred that the loan was subsequently sold by JP Morgan Chase Bank, NA to PrimeStar and then from PrimeStar to plaintiff.

¶ 15    Mallory's lost note affidavit attached a copy of the note, which did not include any indorsement to plaintiff. However, the affidavit also attached an assignment of mortgage from PrimeStar to plaintiff that referenced the underlying note.

¶ 16    Defendant's Combined Motion to Dismiss and Motion for Summary Judgment

¶ 17    On September 27, 2019, defendant filed a combined motion to dismiss "pursuant to 735 ILCS 5/2-619(a)(2) and 735 ILCS 5/2-619(a)(9) and for an order of summary judgment pursuant to 735 ILCS 5/2-1005." On October 22, 2019, defendant filed an amended combined motion to dismiss and for summary judgment.

¶ 18    Defendant sought dismissal under section 2-619(a)(2) due to plaintiff's lack of legal capacity, given that the note was indorsed to PrimeStar and not to plaintiff. Defendant argued that the assignment of mortgage to plaintiff was immaterial because a transfer of a mortgage without assignment of the underlying debt is treated as a "nullity." Defendant otherwise argued the complaint was subject to dismissal under section 2-619(a)(2) due to the earlier misidentification of plaintiff as trustee for the "Brougham Fund I Trust" instead of the "Brougham Fund II Trust." Defendant claimed this could not be "deemed to be a scrivener's error as a matter of law." Defendant also sought dismissal due to "affirmative matter" under section 2-619(a)(9), citing the fact that the note was indorsed to a party other than plaintiff.

¶ 19    Elsewhere in the combined motion, defendant sought summary judgment on the ground that plaintiff never possessed the note and thus had no right to enforce it under section 3-309 of the Uniform Commercial Code. 810 ILCS 5/3-309 (West 2020)[1]. Defendant argued that under section 3-309, a party seeking to enforce a lost note must demonstrate possession prior to its loss.

---

[1] Section 3-309 provides, in relevant part, that a "person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." 810 ILCS 5/3-309 (West 2020).

Defendant asserted that Mallory's lost note affidavit established that plaintiff never possessed the note.

¶ 20 In plaintiff's response, it argued that (1) defendant's arguments were moot because plaintiff had already been granted leave to amend and (2) an inadvertent "misnomer" in plaintiff's name did not warrant dismissal. With respect to defendant's summary judgment argument, plaintiff contended that section 3-309 does not preclude the assignee of a lost instrument from enforcing it, as it "does not say that once an instrument is lost that the party entitled to enforce it can never transfer its right to enforce the instrument to another party."

¶ 21 The January 2020 Oral Argument and Dismissal Order

¶ 22 On January 7, 2020, the court heard argument on the combined motion to dismiss. The court confirmed with defense counsel that it asserted two arguments under section 2-619(a)(2): "The first is that plaintiff lacks capacity to sue, and the second argument is that no facts exist supporting the existence of a scrivener's error." Defense counsel also agreed that it sought dismissal under section 2-619(a)(9) because "the note was made payable to another party." The court also confirmed that the basis for defendant's summary judgment argument was that "plaintiff never even possessed the note" and thus could not enforce it pursuant to section 3-309.

¶ 23 During argument, the court questioned plaintiff's counsel about the contents of the lost-note affidavit and asked if there were documents supporting the affidavit's statement that the subject loan was sold to plaintiff. Plaintiff's counsel responded that the assignment of mortgage evidenced the transfer of the note to plaintiff. When the court asked if plaintiff provided other documents "showing the transfer of ownership" to plaintiff, plaintiff's counsel answered that it had not. The court then asked if there was case law that "would allow me to use an assignment of

mortgage to * * * determine the validity of a transfer of a negotiable instrument." Plaintiff's counsel cited case law for the proposition that when a valid assignment is executed, "the assignee acquires all of the interest of the assignor in the property that has been transferred." Defense counsel responded by arguing that the assignment of a mortgage without a proper assignment of the note is a "nullity."

¶ 24 The court then asked plaintiff's counsel if it had attached to the lost note affidavit a "transfer instrument" or "bill of sale" evidencing the transfer of the loan to plaintiff. Plaintiff's counsel acknowledged it had not, but argued that it had "pleaded sufficient facts to show that we do have the capacity to sue" to survive a section 2-619 motion to dismiss. At that point, the court noted it already gave plaintiff "an opportunity to file an amended complaint" and a new lost note affidavit. The court remarked it did not believe that it could "rely upon an assignment of mortgage to prove transfer of ownership." Plaintiff's counsel indicated it could produce further documents at a later stage but believed the lost note affidavit "should suffice * * * to proceed past the motion to dismiss."

¶ 25 The court then asked the parties to address the summary judgment portion of the motion. Defendant's counsel urged that under section 3-309, "you must establish possession prior to loss" to enforce a lost note. Defendant urged there was no genuine issue of material fact that plaintiff could not enforce the note, as the affidavit admitted that a party other than plaintiff possessed it at the time of loss. In response, plaintiff argued that section 3-309 was not a "prohibition on the assignment of a lost instrument" and that it could enforce the note as assignee, even if it had not possessed the note before its loss. Counsel for both parties argued at length as to whether

authorities from other jurisdictions interpreting section 3-309 of the Uniform Commercial Code supported a conclusion that a party suing to enforce a lost note must have had actual possession.

¶ 26    After argument, the court said it would not dismiss the case based on the "scrivener's error" regarding plaintiff's name. However, it found "significant problems" with Mallory's lost note affidavit. The court stated that the affidavit contained "legal conclusions" that the note was transferred to plaintiff and remarked that there was "no supporting documentation other than an assignment of mortgage" reflecting the transfer to plaintiff.  The court found that the assignment of mortgage was "not enough for me to find that the plaintiff is the actual holder of the note" and remarked that the lack of "underlying transfer documents" was the reason why it had allowed plaintiff to file an amended complaint.

¶ 27    The court concluded that "the note and the allonges show that the current holder of the note is Prime Star-H Fund I Trust," notwithstanding the Mallory affidavit's "unacceptable legal conclusion that the loan has been transferred to [plaintiff.]" The court remarked  that "plaintiff did need to bring its evidence forward at this juncture with regard to the motion for summary judgment." The court stated that it would dismiss the complaint with prejudice and would grant "summary judgment under the same ground that there's no proof that the plaintiff has the capacity and/or any ability to enforce the note." However, the court stated that it did not "rule on the Section 3-309 argument" because it was dismissing due to plaintiff's lack of "legal capacity to sue."

¶ 28    Accordingly, the court's January 7, 2020, written order denied the motion to dismiss with respect to the "scrivener's error" but stated: "defendant's remaining 2-619(a)(2) and 2-619(a)(9) and 2-1005 motions are granted for the reasons stated on the record and Plaintiff's Complaint is

dismissed with prejudice." The order specified that the court was "not making a ruling with respect to the 3-309 possession argument."

¶ 29    The Court Grants Plaintiff's Motion to Reconsider the January 2020 Dismissal

¶ 30    On February 5, 2020, plaintiff filed a motion to reconsider the dismissal. Plaintiff averred that it had provided sufficient proof of the transfer of underlying note to plaintiff, citing language in the assignment of the mortgage to plaintiff. Plaintiff otherwise argued that dismissal was erroneous because the court had improperly required plaintiff to both plead and *prove* its right to foreclosure. Plaintiff argued that, although "evidence of ownership may be necessary to ultimately prevail" it was "not required at the pleading stage." Plaintiff suggested that it could subsequently "provide the Court with proof of ownership" of the note, or that the note could eventually be found.

¶ 31    Insofar as the January 2020 dismissal order granted summary judgment to defendant, plaintiff maintained that the entirety of defendant's motion summary judgment was based upon the section 3-309 issue that the court declined to rule on, *i.e.*, whether "an assignee of a lost instrument must have been in possession of that instrument when it was lost." Plaintiff suggested it was improper for the court to grant summary judgment when it explicitly declined to decide that issue. Plaintiff otherwise contended that the assignment of mortgage to plaintiff evidenced the transfer of the note and created an issue of fact precluding summary judgment.

¶ 32    On September 17, 2020, the court heard argument on plaintiff's motion to reconsider. Defense counsel contended that plaintiff had failed to respond to the basis of motion for summary judgment, *i.e.,* that "they were not the holder of the note, and they didn't have capacity to sue." Defendant asserted he was entitled to summary judgment because there were no documents

showing the note "was ever sold to this plaintiff" and the affidavit indicated that JPMorgan Chase Bank, not plaintiff, had capacity to sue on the note.

¶ 33    Plaintiff argued that dismissal with prejudice was improper, as it "would have the *res judicata* effect of never allowing  [plaintiff] to file this complaint again," even if it subsequently discovered further evidence of its ownership of the note. In response to the court's questions, plaintiff's counsel acknowledged that the "last allonge is endorsed to a party who is not the current plaintiff" but argued that the assignment of mortgage "at least created a genuine issue of material fact" as to the transfer of the note to plaintiff.

¶ 34    After argument, the court stated that it would "reverse my ruling on the motion for summary judgment" and give plaintiff "one more opportunity to replead the complaint."  In so doing, the court commented:

> "I feel that my only error was not an error necessarily of the law but one of equity. After reading everything, I think that it would be fair to allow the plaintiffs the opportunity to – out of the interests of equity, which I'm authorized to engage in in every case before me, one final opportunity to file an amended complaint."

When defense counsel asked the court to clarify its ruling, the court responded:

> "I'm reversing the fact that the complaint was dismissed with prejudice. I'm granting the motion with regard to the 2[-]619 aspect, but I'm dismissing the complaint without prejudice. And I'm reversing my ruling as it relates to the motion for summary judgment."

¶ 35 On September 21, 2020, the court entered a corresponding written order granting plaintiff's motion to reconsider, specifying that it reversed the January 2020 entry of summary judgment and dismissal in favor of defendant. The court's order specified that: "The [January 7, 2020] order granting Defendant's Section 2-619(a)(2) and Section 2-619(a)(9) Motions to Dismiss is reversed in that said motions are granted without prejudice, instead of with prejudice." In the same order, the court allowed plaintiff 35 days to file a second amended complaint.

¶ 36 Plaintiff's Voluntary Dismissal and Defendant's Motion to Reconsider

¶ 37 Plaintiff did not file a second amended complaint. Instead, on October 20, 2020, plaintiff filed a motion to voluntarily dismiss the action. Plaintiff's motion did not specify why it sought dismissal at that point, but stated only that "[p]laintiff wishes to voluntarily dismiss this cause of action without prejudice." The same October 20 filing included a corresponding notice of motion, stating that the motion to dismiss would be heard on November 18, 2020 "or as soon thereafter as counsel may be heard." However, plaintiff's October 20, 2020 filing did not include any proof of service on defendant's counsel. The parties do not dispute that defendant did not receive plaintiff's motion to dismiss on the October 20 filing date.

¶ 38 The following day, October 21, 2020, defendant filed a motion to reconsider the September 21, 2020 order granting plaintiff's motion for reconsideration.

¶ 39 On October 22, 2020, plaintiff filed an "amended notice of motion" regarding its previously-filed motion to voluntarily dismiss the complaint. Plaintiff's October 22 filing included a certification that plaintiff's counsel had served the amended notice of motion on defense counsel. However, the amended notice of motion filed on October 22 did not include a copy of the actual motion to dismiss that was filed two days earlier. Thus, as of October 22, defense counsel had

received the amended notice of motion, but had not yet received a copy of the motion to voluntarily dismiss.

¶ 40    The record reflects that on November 10, 2020, plaintiff's counsel separately e-mailed to defense counsel a copy of the motion to dismiss that was filed on October 20.

¶ 41    The parties next appeared before the court on December 17, 2020. The trial court noted that it had been copied on a number of e-mails in which the parties discussed whether plaintiff's motion to voluntarily dismiss or defendant's motion to reconsider had been filed first, and which motion had "priority" for consideration by the court.

¶ 42    Defense counsel informed the court that he had not received notice of the plaintiff's motion for voluntary dismissal on its filing date, October 20, 2020. He indicated that if he had learned of the motion on October 20, he may have not proceeded to file defendant's motion to reconsider the following day, October 21. Defense counsel acknowledged that on October 22, he received plaintiff's amended notice of motion. Defense counsel also acknowledged that the court's electronic docket reflected plaintiff's motion to dismiss was filed before defendant's motion to reconsider, but he maintained that, since defendant had not been served with the motion to dismiss on the October 20 filing date, "there's a conflict there regarding service and the priority."

¶ 43    Plaintiff's counsel remarked that the precise timing of motions was irrelevant, because case law established that "even if motions are pending, the plaintiff has an absolute right to dismiss its case voluntarily." Defendant responded that because he was not served on the day plaintiff's motion was filed, "both motions should be given equal weight" and it was "a matter of judicial discretion what motions [the court] want[s] to consider."

¶ 44    The court declined to rule on either motion at that time, noting that "before a [section 2-1009] motion can be granted, costs have to be paid." The court indicated to plaintiff's counsel that if defendant's costs were not paid, it could not grant plaintiff's motion for voluntary dismissal. The court asked defendant's counsel how much time it would take to prepare a summary of costs for plaintiff's counsel. Defense counsel indicated that 14 days would be sufficient. The court issued an order directing defense counsel to provide plaintiff's counsel a summary of costs within 14 days, on or before December 31, 2020.

¶ 45    On January 4, 2021, defendant filed a "motion to reconsider the December 17, 2020 order, or in the alternative clarify the service record of competing motions for plaintiff's voluntary dismissal and motion to reconsider the September 21, 2020 order." Defendant argued that because he was not served with plaintiff's motion for voluntary dismissal on its October 20 filing date, that motion did not have priority over his motion to reconsider, and both "must be considered equally." Defendant otherwise argued that he was prejudiced by failure to receive notice of the October 20 motion for voluntary dismissal, insofar as he "invest[ed] significant time, resources, and several days drafting the Motion to Reconsider" that he filed on October 21.

¶ 46    Granting of Plaintiff's Motion for Voluntary Dismissal

¶ 47    The court conducted a hearing on January 14, 2021, noting there were two motions pending: plaintiff's motion to voluntarily dismiss and defendant's motion to reconsider.

¶ 48    The court acknowledged defendant's January 4 filing of a motion to reconsider the December 17 order and to "clarify the service record." However, the court pointed out that, under the judge's rules, counsel may not "piggyback" a new motion for a time previously scheduled for

another motion, without first obtaining leave. Because defense counsel had not sought leave, the court struck defendant's January 4 motion.

¶ 49    The court asked defense counsel if he had sent a summary of costs to plaintiff's counsel on or before December 31, 2020, as directed in the December 14, 2020 order. Defense counsel stated "we did send a summary of costs" to plaintiff's counsel but "not by the [December 31] deadline." Defense counsel indicated he believed he had asked for more time to prepare the summary of costs. The court read aloud the portion of the December 17 hearing transcript in which counsel asked for "14 days," and then confirmed that defense counsel had not requested an extension.

¶ 50    Plaintiff's counsel stated that he received an e-mail from defense counsel with a summarization of costs, but "several of them are incorrect." For instance, plaintiff's counsel stated he confirmed with the court reporter that costs for transcripts were different from what defense counsel reported to him. Defense counsel told the court that he relied on information from his client regarding court costs. Defense counsel also acknowledged he had received a $237 check for an appearance fee from plaintiff's counsel. The court then found that defense counsel did not timely provide a summary of costs, and so plaintiff "had no choice but to send what plaintiff thought was at least the minimum of court costs," which was the $237 appearance and filing fee.

¶ 51    The court proceeded to find plaintiff had met the three elements of a motion to voluntarily dismiss without prejudice pursuant to section 2-1009 of the Code of Civil Procedure, "including the proper notice and court costs." Because it was granting that dismissal motion, the court stated that defendant's motion to reconsider the September 21, 2020 order was "moot."

¶ 52    Defendant's Motion to Reconsider the Voluntary Dismissal

¶ 53    On February 11, 2021, defendant filed a motion to reconsider the January 14, 2021 order granting plaintiff's motion to voluntarily dismiss. Defendant argued that because the motion for voluntary dismissal was not properly served on its October 20 filing date, it did not have priority over defendant's motion to reconsider filed October 21, 2020. Defendant claimed that, because he filed his motion to reconsider before he was served with the voluntary dismissal motion, the court was obligated to consider defendant's motion.

¶ 54    Defendant also argued the voluntary dismissal motion did not comply with section 2-1009, insofar as it required plaintiff to give proper notice. Defendant separately asserted plaintiff had no right to dismissal, citing section 2-1009(a)'s language that such motion may be filed "at any time before trial or hearing begins." 735 ILCS 5/2-1009(a) (West 2020). Defendant urged that since "a summary judgment hearing had previously been conducted on January 7, 2020", plaintiff's motion to dismiss was "too late."

¶ 55    On March 4, 2021, the court heard argument on defendant's motion to reconsider the voluntary dismissal. Defendant's counsel emphasized that there was no proof of service page with plaintiff's October 20 filing of the motion to dismiss, and so defense counsel was not served on that date.

¶ 56    The court explained that it had reviewed the "Clerk's access" database, which showed: (1) on October 20, plaintiff filed its motion to dismiss and a notice of motion; (2) defendant filed a motion to reconsider on October 21; (3) on October 22, plaintiff filed an amended notice of motion and a certificate of service, and (4) also on October 22, defendant filed a notice of motion. Upon questioning by the court, defense counsel acknowledged he was served with the amended notice of plaintiff's motion on October 22. Defense counsel also acknowledged that on November 10,

plaintiff's counsel provided him with a copy of the motion to dismiss. Nevertheless, defense counsel asserted that plaintiff "needed to notice [the October 20 motion] to me prior to the filing of defendant's motion to reconsider."

¶ 57    Defendant also claimed that the court was obligated to consider defendant's pending motion before dismissing the case under section 2-1009 of the Code. When the court asked for statutory support, defense counsel cited section 2-1009(b)'s statement: "The court may hear and decide a motion that has been filed prior to a motion filed under subsection (a) * * * when that prior filed motion, if favorably ruled on by the court, could result in a final disposition of the case." 735 ILCS 5/2-1009(b) (West 2020). The court pointed out that the statute says the court "may" consider a prior defense motion, indicating it had discretion to decide such a motion before granting voluntary dismissal.

¶ 58    After the conclusion of oral argument, the court denied defendant's motion to reconsider the January 14, 2021 order. On March 9, 2021, the court entered a corresponding written order.

¶ 59    On April 2, 2021, defendant filed a notice of appeal. On April 4, 2021 defendant filed an amended notice of appeal, specifying that he challenged: (1) the September 21, 2020 order granting plaintiff's motion to reconsider the January 7, 2020 dismissal order; (2) the December 17, 2020 order requiring defendant to produce an itemization of costs; (3) the January 14, 2021 order granting plaintiff's motion to voluntarily dismiss the case; and (4) the March 9, 2021 order denying defendant's motion to reconsider the January 14, 2021 order.[2]

¶ 60    ANALYSIS

_____

[2] Plaintiff's briefing does not contain any distinct arguments specifically challenging the December 17, 2020 or March 9, 2021 orders.

¶ 61     On appeal, defendant primarily asserts reasons why the trial court erred in its September 2020 order granting plaintiff's motion to reconsider the January 2020 order granting summary judgment to defendant and dismissing the case with prejudice. Defendant urges that the court should not have disturbed January 2020 entry of summary judgment in defendant's favor, because the note was not endorsed to plaintiff and the lost note affidavit stated that JPMorgan Chase Bank was the last party in possession of the note. He also argues that summary judgment was warranted under section 3-309 of the Uniform Commercial Code (810 ILCS 5/3-309 (West 2020), because a party attempting to enforce a lost instrument must have possessed it before the loss.

¶ 62     Separately, defendant attacks the court's decision to grant plaintiff's motion for voluntary dismissal pursuant to section 2-1009 of the Code. 735 ILCS 5/2-1009 (West 2020). He suggests we should reverse that order because (1) plaintiff did not provide the statutorily required "notice" of the dismissal motion; (2) the motion for voluntary dismissal was untimely because there had already been a "hearing" within the meaning of section 2-1009(a), and (3) the court erred in granting voluntary dismissal without considering defendant's pending motion to reconsider the September 2020 order. For the following reasons, we determine that we lack jurisdiction to review the September 2020 order. However, we affirm the January 2021 order granting plaintiff's motion for voluntary dismissal and the denial of defendant's motion to reconsider that order.

¶ 63     <u>We Lack Jurisdiction to Review Non-Final Orders Prior to Voluntary Dismissal</u>

¶ 64     Before we address the merits, we note that we clearly have jurisdiction to review the January 2021 order granting plaintiff's motion for voluntary dismissal, as well as the denial of defendant's motion to reconsider that order. See Ill. S. Ct. R. 303(a) (eff. July 1, 2017); *Kahle v.*

- 17 -

*John Deere Co.*, 104 Ill. 2d 302, 307 (1984) (holding that a plaintiff's voluntary dismissal pursuant to section 2-1009 is "final and appealable by the defendants.").

¶ 65    However, plaintiff disputes our jurisdiction to review defendant's challenges to the September 21, 2020 order that granted plaintiff's motion to reconsider the January 7, 2020 dismissal order that entered summary judgment in favor of defendant. For the following reasons, we agree that we lack jurisdiction to consider defendant's challenge to the September 21, 2020 non-final order, notwithstanding the subsequent voluntary dismissal order.

¶ 66    Our supreme court has explained that a plaintiff's voluntary dismissal under section 2-1009 renders all previously entered *final* orders appealable: "The order of voluntary dismissal, because it disposed of all matters pending before the circuit court, rendered all orders *which were final in nature*, but which were not previously appealable, immediately final and appealable. It is well settled that *final orders* entered in a case become appealable following a voluntary dismissal." (Emphases added.) *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503 (1997); see also *Hudson v. City of Chicago*, 228 Ill. 2d 462, 468 (2008) ("Once the voluntary dismissal was entered, *Hudson I* was terminated in its entirety and all final orders became immediately appealable. [Citation.]").

¶ 67    On the other hand, our precedent indicates that a voluntary dismissal does not confer appellate jurisdiction to review previously entered *non-final* orders. As this court has explained:

> "[A]n order granting a plaintiff's motion for a voluntary dismissal is
> final and appealable by a defendant * * *. However, the power of
> this court to address a defendant's appeal from an order granting a
> plaintiff's motion for a voluntary dismissal * * * *does not form the*

*jurisdictional basis from which we may also address the substantive merits of other non-final orders entered by a trial court prior to the granting of a voluntary dismissal*." (Emphasis added.) *Valdovinos v. Luna-Manalac Medical Center, Ltd*., 307 Ill. App. 3d 528, 537 (1999) (citing *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 135-40 (1995)).

¶ 68    In *Valdovinos*, this court stated that "we have jurisdiction to review interlocutory orders of a trial court if those orders constitute a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken. [Citation.]" *Id.* at 538. However, "[w]hen the interlocutory orders of a trial court do not constitute such a procedural step, we have no jurisdiction to review them absent some specific statute or rule granting us the power." *Id.* Our court in *Valdovinos* held that it lacked jurisdiction over interlocutory orders preceding the voluntary dismissal in that case, including denial of certain defendants' motion for summary judgment. *Id.* ("None of the interlocutory orders entered * * * denying motions for summary judgment * * * are a procedural step in granting a motion for a voluntary dismissal * * *. Consequently, we lack the requisite jurisdiction to review them. [Citations.]").

¶ 69    The court reaffirmed these principles in *Resurgence Financial, LLC v. Kelly*, 376 Ill. App. 3d 60 (2007), which bears some resemblance to the instant case, insofar as defendant challenged plaintiff's right to sue upon a debt. The plaintiff in *Resurgence Financial* alleged that it was the assignee of credit card debt incurred by defendant. *Id.* at 60. Plaintiff's amended complaint attached an affidavit and other documents indicating that plaintiff purchased the underlying account. *Id.* at 61. Defendant moved for summary judgment, "arguing that the attachments to the

complaint failed to show the existence of an agreement or debt" between defendant and plaintiff. *Id.* After the court denied defendant's motion for summary judgment, plaintiff filed a motion to dismiss without prejudice. *Id.* The trial court granted the plaintiff's dismissal motion, and defendant unsuccessfully moved for fees pursuant to the Credit Card Liability Act. *Id.*

¶ 70    On defendant's appeal, the court determined it lacked jurisdiction to review the denial of defendant's summary judgment motion, recognizing that the "the denial of a motion for summary judgment is not final. [Citation.]" *Id.* at 62. The court explained that "the power to address a defendant's appeal from a voluntary dismissal 'does not form the jurisdictional basis from which we may also address the substantive merits of other nonfinal orders.'" *Id.* (quoting *Valdovinos*, 307 Ill. App. 3d at 537). Citing *Valdovinos,* the *Resurgence Financial* court explained that the denial of summary judgment was *not* made reviewable by the subsequent voluntary dismissal:

> "It is true that an appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment. [Citation.] But such orders must constitute procedural steps in the progression leading to the entry of the final judgment. [Citation.] The denial of summary judgment is not a procedural step to an order of voluntary dismissal. [Citation]. Thus, the denial here was neither a final judgment nor a procedural step to a final judgment, and it is not appealable." *Id.*

¶ 71    More recently, the court has also held "that a voluntary dismissal * * * makes appealable only those orders preceding the voluntary dismissal that were 'final in nature.'" *Bauman v. Patterson*, 2018 IL App (4th) 170169, ¶ 34 (quoting *Dubina*, 178 Ill. 2d at 503 (1997)). *Bauman*

found that "*Resurgence Financial* correctly concluded that because the denial of a motion for summary judgment lacked finality, a subsequent termination of the case by a voluntary dismissal did not make the denial appealable. [Citation.]" *Id.* ¶ 36. *Bauman* further held that, pursuant to the supreme court's instruction in *Dubina*, "it is irrelevant whether an order preceding the voluntary dismissal was a 'procedural step' to the voluntary dismissal" but that the "only relevant consideration is the finality of the preceding order." *Id.* ¶ 37 (citing *Dubina*, 178 Ill. 2d at 503). The *Bauman* court explained that the "procedural-step analysis applies to a wholly different question: the construction of a notice of appeal when the appeal is from a final judgment," under the principle that the notice is liberally construed to include prior orders that were a step in the procedural progression leading to the judgment. *Id.* (citing *In re Jamari J.*, 2017 IL App (1st) 160850, ¶ 39). The court emphasized that "[t]his legal construct is not germane to the issue of the appealability of an interlocutory order that preceded the plaintiff's voluntary dismissal, without prejudice, of all remaining claims." *Id.*

¶ 72    Based on the above precedent, we find that we lack jurisdiction to review the September 21, 2020 order granting plaintiff's motion to reconsider, as it was a non-final order. We agree with *Bauman* that the key inquiry in assessing our jurisdiction to review an order preceding a voluntary dismissal is whether it was a *final* order. This aligns with our supreme court's recognition that an order of voluntary dismissal renders "orders which were final in nature, * * * immediately final and appealable" (*Dubina*, 178 Ill. 2d at 503), as well as this court's prior statement that an order granting voluntary dismissal "does not form the jurisdictional basis from which we may also address the substantive merit of other *non-final orders* entered by a trial court prior to the granting of a voluntary dismissal. [Citation.]" (Emphasis added.) *Valdovinos*, 307 Ill. App. 3d at 537.

¶ 73    In this case, the September 21, 2020 order granting plaintiff's motion to reconsider had the effect of reversing the January 2020 dismissal order, thus allowing the action to proceed. Clearly, this was a non-final order. See *id.* at 538 ("A judgment is final for appeal purposes if it determines the litigation on the merits or some definite part thereof so that, if affirmed, the only thing remaining to be done by the trial court is to proceed with execution on the judgment. [Citations.]")

¶ 74    In its reply brief, defendant urges that we do have jurisdiction over the September 21, 2020 order. Defendant does not dispute that it was not a final order but argues it should be reviewable as a "step in the procedural progression" leading to the voluntary dismissal, insofar as plaintiff could have not have ultimately dismissed the case, if the court did not grant plaintiff's motion to reconsider the January 2020 dismissal. Defendant directs our attention to *Cedric Spring & Associates, Inc. v. N.E.I. Corp.*, 81 Ill. App. 3d 1031 (1980) and *DePluzer v. Village of Winnetka*, 265 Ill. App. 3d 1061 (1994). However, those cases are unavailing.

¶ 75    The decision in *Cedric Spring & Associates, Inc.* is procedurally inapposite. In that action, the trial court denied a defendant's motion for summary judgment. 81 Ill. App. 3d at 1032. When that defendant failed to produce requested documents and witnesses for trial pursuant to Supreme Court Rule 237(b), the trial court granted plaintiff's motion for a default judgment as a sanction. *Id.* Defendant sought appellate review of the denial of its summary judgment motion. On appeal, the court stated that "the reviewability of the denial of a motion for summary judgment where the case is on appeal from a final judgment * * * is not so clear or well established", suggesting such an order could be reviewed if "the party seeking such review has not in any way prevented or avoided such hearing or trial." *Id.* at 1033-34. However, since the default judgment stemmed from defendant's non-compliance with Rule 237(b), the *Cedric Spring* court held that the denial of

defendant's motion for summary judgment was not reviewable. *Id. Cedric Spring & Associates, Inc.* is not relevant to the instant case, as it did not concern the reviewability of a non-final order following entry of a voluntary dismissal order.

¶ 76    Our decision in *DePluzer v. Village of Winnetka*, 265 Ill. App. 3d 1061 (1994) is also not controlling in light of subsequent precedent. In *DePluzer*, defendant moved for summary judgment on plaintiff's two-count complaint, and plaintiff moved for voluntary dismissal. *Id.* at 1063. In a single order, the trial court granted summary judgment to defendant on count I, denied the summary judgment motion with respect to count II, and granted plaintiff's motion for voluntary dismissal as to count II. *Id.* Defendant appealed the denial of summary judgment as to count II, and plaintiff cross-appealed. The *DePluzer* court acknowledged that "the denial of a motion for summary judgment is typically not appealable." *Id.* at 1064. However, it reasoned that it had jurisdiction to consider the denial of defendant's motion for summary judgment on count II, "because, in addition to denying summary judgment, the trial court granted [plaintiff's] motion to voluntarily dismiss this count, making the order final and appealable." *Id.* at 1064-65. The court stated: "the order granting DePluzer a voluntary dismissal * * * is a final and appealable order, which brings before the reviewing court all other orders and rulings directly associated with that judgment, including, in this case, the denial of summary judgment." *Id.* at 1065.

¶ 77    *DePluzer* does not resemble the instant case. The *DePluzer* court deemed the denial of summary judgment was reviewable because it was in the *same order* granting plaintiff's voluntary dismissal motion. Here, the September 2020 order that defendant seeks to challenge was entered months before the January 2021 voluntary dismissal. More importantly, the 1994 *DePluzer* decision preceded our supreme court's decision in *Dubina*, as well as this court's recognition that

- 23 -

an order granting voluntary dismissal "does not form the jurisdictional basis from which we may also address the substantive merit of other *non-final orders* entered by a trial court prior to the granting of a voluntary dismissal. [Citation.]" (Emphasis added.) *Valdovinos*, 307 Ill. App. 3d at 537. As there is no question that the September 2020 order was not final, the subsequent grant of voluntary dismissal does not afford us jurisdiction to review it.

¶ 78    For the above reasons, we will not address the merits of the parties' arguments as to the correctness of the September 2020 order granting plaintiff's motion to reconsider the January 2020 dismissal order. We will proceed to address defendant's appeal from the January 2021 order granting plaintiff's motion for voluntary dismissal.

¶ 79    Plaintiff's Mootness Argument Is Without Merit

¶ 80    Before we turn to the merits of defendant's appeal from the grant of voluntary dismissal, we note plaintiff's contention that we should decline to address that challenge as moot. Plaintiff states that defendant's appeal from the voluntary dismissal is moot because defendant "has already received the relief he purports to seek." According to plaintiff, defendant seeks "dismissal of the case" but the trial court already granted plaintiff's voluntarily dismissal motion. We find this mootness argument is unpersuasive.

¶ 81    "An appeal is considered moot where it presents no actual controversy or where the issues have ceased to exist. [Citations.] *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). "[A]n actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions. [Citation.]" *Id*. "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. [Citations.]" *In re Alfred H.H.*, 233

Ill. 2d 345, 351 (2009). "The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. [Citation.]" *In re Andrea F.*, 208 Ill. 2d at 156.

¶ 82 Given the procedural posture of this case—and recognizing the distinction between voluntary dismissal *without prejudice* under section 2-1009 and an involuntary dismissal *with prejudice*—we reject plaintiff's contention that the appeal is moot. Plaintiff claims reversal of the voluntary dismissal order would not give any "effectual relief" to defendant "as the relief being sought by Defendant on appeal is a dismissal of the case." This mootness argument is an oversimplification of the complex procedural posture in this case. Before the trial court voluntarily dismissed the case, it had (1) entered the January 2020 order on defendant's combined motion that dismissed the case *with prejudice*; (2) reversed that dismissal in its September 2020 order granting plaintiff's motion to reconsider; and (3) defendant moved in October 2020 to reconsider the September 2020 order. Defendant's motion to reconsider was pending when the court granted plaintiff's motion for voluntary dismissal. In other words, at the time of the voluntary dismissal without prejudice, defendant had an outstanding motion which sought to reinstate the January 2020 dismissal *with prejudice.*

¶ 83 In light of this, we cannot agree with plaintiff's suggestion that defendant "has already received the relief he purports to seek", rendering his appeal moot. Hypothetically, if we were to reverse the voluntary dismissal and remand for further proceedings, defendant's October 2020 motion to reconsider would still be pending in the trial court. Although we do not speculate how the court might rule in that situation, we recognize there is a possibility that the trial court could decide that motion in defendant's favor, potentially resulting in a new dismissal order with

prejudice. In short, defendant's appeal from the voluntary dismissal seeks to allow him the opportunity to obtain dismissal with prejudice, which is substantially different from the dismissal without prejudice that was entered. Thus, we reject plaintiff's suggestion that there is no controversy or that the appeal is moot. We will thus proceed to address the merits of defendant's challenges to the voluntary dismissal order.

¶ 84    <u>Whether the Court Erred in Granting Plaintiff's Motion for Voluntary Dismissal</u>

¶ 85    Defendant asserts the trial court's decision to grant voluntary dismissal pursuant to section 2-1009(a) of the Code was erroneous on multiple grounds. First, he contends that two requirements of section 2-1009(a) were not met insofar as (1) plaintiff did not give proper "notice" and (2) there had already been a "hearing" in the case. 735 ILCS 5/2-1009(a) (West 2020). Defendant otherwise suggests that the court erred in granting voluntary dismissal without deciding defendant's motion to reconsider the order of September 21, 2020. As explained below, we find these contentions without merit.

¶ 86    Section 2-1009 of the Code provides:

> "(a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause.

> (b) The court may hear and decide a motion that has been filed prior to a motion filed under subsection (a) of this Section when

that prior filed motion, if favorably ruled on by the court, could result in a final disposition of the cause.

(c) After trial or hearing begins, the plaintiff may dismiss, only on terms fixed by the court (1) upon filing a stipulation to that effect signed by the defendant, or (2) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof." 735 ILCS 5/2-1009 (West 2020).

¶ 87 "[S]ection 2-1009(a) * * * by its terms, confers on plaintiffs an unfettered right to voluntarily dismiss their claims without prejudice, upon proper notice and payment of costs, 'at any time before trial or hearing begins.' " *Morrison v. Wagner*, 191 Ill. 2d 162, 165 (2000). That is, "[a]lthough plaintiffs generally have an absolute right to voluntary dismissal, they must comply with the requirements of section 2-1009. [Citation.]" *Vaughn v. Northwestern Memorial Hospital*, 210 Ill. App. 3d 253, 258 (1991). "Those requirements are (1) no trial or hearing shall have begun; (2) costs must be paid; and (3) notice must be given." *Id.* at 257. "[T]he failure to comply with any of the three requirements can deprive the plaintiff of her right to voluntarily dismiss her case. [Citations.]" *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 328 Ill. App. 3d 255, 267 (2002).

¶ 88 " 'When a party complies with the requirements of section 2-1009(a), her right to a voluntary dismissal is, with very limited exceptions, unfettered.' " *Boehle v. OSF Healthcare System*, 2018 IL App (2d) 160975, ¶ 15 (quoting *Smith v. Bartley*, 364 Ill. App. 3d 725, 727 (2006)). If those threshold requirements are met, the right to dismissal under section 2-1009(a) is "subject to two qualifications," as follows:

"First, where a previously filed defense motion could result in a final disposition of the cause of action if ruled upon favorably by the court, the court has the discretion to hear and decide that motion before ruling on the plaintiff's motion for voluntary dismissal. [Citation.] Second, where the circumstances of the case are such that dismissal under section 2-1009 would directly conflict with a specific rule of this court, the terms of the rule take precedence. [Citations.]" *Morrison*, 191 Ill. 2d at 165 (2000).

¶ 89 Here, defendant argues that two of section 2-1009(a)'s threshold requirements were not met because (1) plaintiff did not give "notice" of the motion to voluntary dismiss and (2) the motion was made after a "hearing" occurred. Defendant additionally suggests that the trial court erred by not ruling on his motion to reconsider before granting plaintiff's dismissal motion. We address these challenges in turn.

¶ 90 <u>Whether There Was Proper "Notice" of the Dismissal Motion Under Section 2-1009(a)</u>

¶ 91 Defendant suggests that plaintiff failed give the statutorily required "notice to each party" of the voluntary dismissal motion filed on October 20, 2020. 735 ILCS 5/2-1009(a) (West 2020). Defendant urges that the motion was not properly served on defendant, emphasizing that plaintiff's filing on October 20, 2020 "contained no service list, and thus was defective on its face."

¶ 92 Defendant acknowledges that two days later, October 22, 2020, plaintiff filed an "amended notice of motion" that defense counsel received on that date. However, he points out that "[t]here was no pleading attached to the amended notice," so that he did not receive a copy of the actual motion to dismiss at that time. Defendant claims the trial court improperly concluded that notice

was sufficient under section 2-1009(a). He further urges that, because service of the plaintiff's dismissal motion was defective, that motion did not have "priority" over defendant's motion, and thus plaintiff was not entitled to voluntary dismissal.

¶ 93    In its brief, plaintiff does not give a detailed response to defendant's claim of lack of notice. Plaintiff notes that the court found that plaintiff had "met all three elements of [section 2-1009(a)] including the proper notice and the payment of court costs" and urges that its findings "were not against the manifest weight of the evidence."

¶ 94    After a close review of the record, we find that defendant's claim of lack of "notice" is unavailing. We acknowledge that defendant did not receive a copy of the voluntary dismissal motion or the original notice of motion on the date they were filed (October 20, 2020), which technically did not comply with local rules governing service. Nevertheless, the record demonstrates that defense counsel received the amended notice of motion two days later (October 22, 2020) and received a copy of the actual motion no later than November 10, 2020. Thus, defendant had actual notice of plaintiff's motion to dismiss well before it was heard by the court, and defendant suffered no prejudice by any delay.

¶ 95    Section 2-1009(a) does not explicitly reference any other rules regarding its requirement that there must be "notice to each party who has appeared or each such party's attorney." 735 ILCS 5/2-1009(a) (West 2020). However, our court has held that the notice requirement in section 2-1009 "is clearly defined by local rules." *Vaughn*, 210 Ill. App. 3d at 257 (finding that "[Cook County] Circuit Court Rule 2.1(a) and (c)(1) governs the notice requirement" and concluding that plaintiff failed to give requisite notice of motion to voluntary dismiss). We thus review the governing circuit court rules.

¶ 96    Cook County Circuit Court Rule 2.1 states in relevant part:

> "(a) Notice required – Except in actions appearing on the daily trial
> call or during the course of trial, written notice of the hearing of all
> motions shall be given to all parties who have appeared * * *.
>
> (b) Content of notice – The notice of hearing shall show * * * the
> time and date when, and the place where the motion will be
> presented. If the motion is made orally, the notice shall state the
> nature of the motion. *If the motion is presented in writing, a copy of
> the motion or a statement that it previously has been served, shall
> be served with the notice. Copies of all papers presented to the court
> with the motion shall be served with the notice or the notice shall
> state that copies have been served.*
>
> (c) Manner and time of service of notice.
>
> (i)    Notice shall be given in the manner and to the persons described in Supreme
> Court Rule 11." (Emphasis added.) Cook County Cir. Ct. R. 2.1 (amended
> Aug. 21, 2000).

In turn, Supreme Court Rule 11(a) provides that if a party is represented by an attorney of record,
service shall be made upon the attorney. Ill. S. Ct. R. 11(a). Rule 11(c) states that "[u]nless
specified by rule or order of court, documents shall be served electronically." Ill. S. Ct. R. 11(c).

¶ 97    The record on appeal indicates that when plaintiff filed the motion to dismiss in October
2020, it did not fully comply with Cook County Circuit Court Rule 2.1 Indeed, both its October
20 and October 22 filings were technically deficient, for different reasons: the October 20 filing

was missing proof of service on defense counsel, and the October 22 filing was missing a copy of the previously filed motion.

¶ 98    On October 20, 2020, plaintiff filed a notice of motion for a hearing on a "motion to dismiss" to occur on November 18, 2020 "or as soon thereafter as counsel may be heard." The October 20 notice of motion attached a single-page motion to voluntarily dismiss the matter without prejudice. However, plaintiff's October 20 filing did not include a proof of service stating that the filed documents had been served on defendant. There is no dispute that defendant was not served on the October 20 filing date.

¶ 99    Two days later, on October 22, 2020, plaintiff filed an "amended notice of motion" referencing the same proposed hearing date, as well as a "proof of service and verification of certification page" indicating that "the above-referenced documents" would be electronically served upon defendant's counsel. The parties do not dispute that this amended notice of motion was, in fact, sent to defense counsel on October 22. However, plaintiff's October 22 filing did not include a copy of the actual motion for voluntary dismissal, meaning the actual motion was not transmitted to defense counsel at that time. Thus, plaintiff's October 22, 2020 filing was also technically non-compliant with Cook County Circuit Court Rule 2.1(b).

¶ 100   Nonetheless, we find this technical non-compliance does not warrant reversal. We are guided by our court's recognition that "a failure to serve a nonmoving party with notice renders a subsequent order based on the motion voidable rather than void. The determining factor is not the absence of notice but whether there was any harm or prejudice to the nonmoving party." *Matter of American Mutual Reinsurance Co.*, 238 Ill. App. 3d 1, 11 (1992).

¶ 101 On the record before us, we cannot discern any prejudice to defendant resulting from plaintiff's noncompliance with Cook County Circuit Court Rule 2.1. Notably, defense counsel acknowledged in open court that he did receive the amended notice of motion on October 22. Thus, defense counsel was aware at that time that plaintiff was moving for voluntary dismissal, even if counsel did not yet have a copy of the single-page motion. Further, defense counsel received a copy of the actual motion to dismiss from plaintiff's counsel no later than November 10, 2020. Defense counsel acknowledged this fact in open court. Thus, defense counsel had received both the amended notice of motion and a copy of the motion to dismiss by November 10, 2020—eight days before the November 18 hearing date specified in the amended notice of motion, and over a month before the motion was actually argued before the court on December 17, 2020.

¶ 102 We also note that defendant does not suggest that his ability to respond to the motion for voluntary dismissal was prejudiced by any delay in receiving a copy of that motion. Rather, the only form of "prejudice" he alleges is that he "invest[e]d significant time, resources, attorney fees, court reporting fees and several days drafting the motion to reconsider" that he filed on October 21, 2020. However, that contention does not relate to whether plaintiff gave the requisite "notice" of the motion but goes to the separate question of whether the court erred in granting voluntary dismissal despite the pendency of defendant's motion to reconsider.

¶ 103 In sum, under the record before us we reject the defendant's argument that it lacked "notice" of the motion for voluntary dismissal, as required by section 2-1009(a). 735 ILCS 5/2-1009(a) (West 2020). We will thus proceed to his alternative contentions challenging that dismissal.

¶ 104   <u>Plaintiff Moved for Voluntary Dismissal "Before Trial or Hearing" Within the Meaning</u>

<u>of Section 2-1009(a)</u>

¶ 105   We turn to defendant's claim that we should reverse the voluntary dismissal because plaintiff failed to meet another requirement of section 2-1009(a): that the motion must be made "before trial or hearing begins." 735 ILCS 5/2-1009(a) (West 2020). Specifically, defendant asserts that the January 7, 2020 hearing on his combined motion to dismiss and motion for summary judgment was a "hearing" within the meaning of section 2-1009(a), such that plaintiff's subsequent October 2020 dismissal motion was untimely. Defendant otherwise suggests that oral arguments on other motions constituted "hearings" under that statutory provision.[3] We disagree, as our precedent indicates that only an evidentiary hearing equivalent to a trial is a "hearing" in this context. On the other hand, the mere fact that the court heard oral argument on a potentially dispositive motion does not preclude a motion for dismissal under section 2-1009(a).

¶ 106   Our supreme court has stated that, "in the context of section 2-1009, 'hearing' is the equitable equivalent of a trial. [Citations.]" *Kahle v. John Deere Co.,* 104 Ill. 2d 302, 309 (1984). "In other words, a hearing is a nonjury proceeding in which evidence is taken on the merits." *Id.* This court has held that a "hearing 'does not begin until the parties begin to present their arguments and evidence to the court sitting without a jury in order to achieve an ultimate determination of their rights.' " *Metcalfe v. St. Elizabeth Hospital*, 160 Ill. App. 3d 47, 50 (1987). "The question of whether a trial or hearing has begun within the meaning of section 2-1009 of the Code is a legal one. [Citation.]" *Valdovinos*, 328 Ill. App. 3d at 266 (noting that "the fact * * * that the trial court

---

[3] In arguing that plaintiff's voluntary dismissal was too late under section 2-1009(a), defendant contends that "four hearings were held, including two Section 2-619.1 motions to dismiss (and for summary judgment) by the Defendant, and two motions to reconsider by the Plaintiff."

in the instant case had issued far more pre-trial rulings than did the trial court in *Kahle* does not change the principle * * * that pre-trial motion practice is not part of the trial itself.").

¶ 107 Defendant has not identified a case (and we are aware of none) determining that an oral argument upon a motion for summary judgment constitutes a "hearing" within the meaning of section 2-1009(a). Defendant, citing pre-*Kahle* precedent applying section 2-1009's predecessor statute in Section 52(1) of the Civil Practice Act, suggests that any hearing on a dispositive motion qualifies as a "hearing" under section 2-1009(a). See *Palos Heights v. Worth*, 29 Ill. App. 3d 746, 749 (1975) ("Since a motion * * * by a defendant to dismiss would terminate the litigation if sustained, a hearing within the meaning of section 52(1) had begun."); *Bernick v. Chicago Title & Trust Co.*, 325 Ill. App. 495, 500-01 (1945) (interpreting Section 52's phrase "at any time before trial or hearing begins" to preclude a nonsuit after a motion to dismiss on *res judicata* grounds). But this case law is unpersuasive, as subsequent decisions applying *Kahle*'s test have found that mere argument on a motion to dismiss is not the equivalent of a "hearing" for purposes of section 2-1009. See, e.g., *Metcalfe*, 160 Ill. App. 3d at 50 ("There had been a hearing on defendants' motion to dismiss, but this hearing was not the equitable equivalent of a trial. No evidence was taken on the merits of the action. Therefore, plaintiff had an absolute right to voluntarily dismiss his action."); *Espedido v. St. Joseph Hospital*, 172 Ill. App. 3d 460, 470 (1988) (hearing on motion to dismiss based on failure to attach physician's certification to medical malpractice complaint "was not the equitable equivalent of trial"); *Bailey v. State Farm Fire & Cas. Co.*, 137 Ill. App. 3d 155, 158-59 (1985) ("the granting of defendant's motion to dismiss, with plaintiff being granted leave to amend, did not prevent plaintiff from exercising her absolute right to a voluntary

dismissal."). This is consistent with our court's statement that "pre-trial motion practice is not part of the trial itself." *Valdovinos*, 328 Ill. App. 3d at 266.

¶ 108    Defendant also cites a more recent case holding that, where proceedings on a motion to dismiss under the Citizen Participation Act (735 ILCS 110/1 *et seq.*) constituted a full "evidentiary hearing", the plaintiff could not then move for dismissal under section 2-1009(a). *Midwest REM Enterprises, Inc. v. Noonan*, 2015 IL App (1st) 132488, ¶ 53 ("[T]he evidentiary hearing in the case had commenced long before plaintiff brought their motion for voluntary dismissal. The parties do not discuss section 2-1009(c), but we do not see why that section would not apply. If it does apply, then plaintiffs had already lost the right to voluntarily dismiss the complaint under section 2-1009(a)."). However, the proceedings on the motion to dismiss in *Midwest REM Enterprises* "include[ed] extensive discovery, lasted two and a half years" and involved an evidentiary hearing where the court heard witness testimony and "numerous exhibits." *Id.* ¶¶ 25-35. By the time the motion for voluntary dismissal was filed, "the trial court had already heard a complete trial on the merits." *Id.* ¶ 54. Clearly, the situation in *Midwest REM Enterprises* went far beyond oral argument on a dispositive motion.

¶ 109    Taken together, this precedent indicates that mere argument on a party's dispositive motion—including a motion for summary judgment—is not the "equitable equivalent of a trial" where evidence "is taken on merits." *Kahle*, 104 Ill. 2d at 309. Indeed, a summary judgment motion seeks to *preclude* a trial on the merits. See *Bayview Loan Servicing, LLC v. Nelson*, 382 Ill. App. 3d 1184, 1187 (2008) recognizing "summary judgment is a drastic remedy that defeats the nonmovant's right to a trial"). In other words, for purposes of section 2-1009(a), there is a distinction between mere argument on a potentially dispositive motion, compared to an evidentiary

"hearing" that requires the court to weigh the parties' evidence and make factual determinations on the ultimate merits. See *Metcalfe*, 160 Ill. App. 3d at 50 ( a "hearing 'does not begin until the parties begin to present their arguments and evidence to the court * * * to achieve an ultimate determination of their rights.' ")

¶ 110   In this case, we cannot say that any of the prior proceedings, including the January 7, 2020 argument on defendant's combined motion to dismiss and motion for summary judgment, was the "equitable equivalent of a trial." *Kahle*, 104 Ill. 2d at 309. Specifically, although the parties disputed the legal effect of previously submitted evidence at the January 7, 2020 oral argument with respect to plaintiff's capacity to maintain the action, that proceeding was not equivalent to a trial where evidence is presented and "taken on the merits." *Id.* This distinguishes the proceeding from a "hearing" within the meaning of section 2-1009(a).

¶ 111   We recognize that, at the January 7, 2020, hearing, the court made inquiries and heard counsel's arguments about the documents that plaintiff attached to the amended complaint to show its ability to enforce the note. That is, the parties disputed whether the lost note affidavit and copies of the note and assignment of mortgage were sufficient indicia of plaintiff's capacity to maintain the action. The court challenged plaintiff's counsel as to whether it had additional documentation of the alleged transfer of ownership of the note, before concluding that it would dismiss due to insufficient "proof that the plaintiff has the capacity and/or any ability to enforce the note."

¶ 112   Although the court heard legal argument on January 7, 2020 as to whether the attachments to plaintiff's complaint were enough to avoid dismissal for lack of capacity, that proceeding was not akin to an evidentiary hearing or trial where evidence is presented and weighed for an "ultimate determination" of the parties' rights. *Metcalfe*, 160 Ill. App. 3d at 50. The court was essentially

deciding whether plaintiff's amended complaint was legally sufficient for the action to proceed, which is different from hearing and weighing evidence at the "equitable equivalent of a trial." *Kahle* 104 Ill. 2d at 309. Applying this distinction in this case comports with the previously cited post-*Kahle* precedent finding that mere argument on a motion to dismiss is *not* a "hearing" for purposes of section 2-1009.

¶ 113   For these reasons, we conclude that the January 7, 2020 argument was not a "hearing" within the meaning of section 2-1009, nor were the other oral arguments preceding the voluntary dismissal. We thus reject defendant's argument that plaintiff failed to move for voluntary dismissal "before trial or hearing begins."  735 ILCS 5/2-1009(a) (West 2020).

¶ 114   <u>Defendant's Pending Motion to Reconsider Did Not Preclude Voluntary Dismissal</u>

¶ 115   We have now rejected defendant's claims that plaintiff did not meet two of the threshold requirements to seek dismissal under section 2-1009(a), *i.e.*, that plaintiff did not give "notice" and that plaintiff did not seek dismissal "before trial or hearing begins." *Id.* Defendant otherwise suggests that the trial court erred in granting voluntary dismissal because it did so without considering and ruling upon defendant's motion to reconsider the September 21, 2020 order, which in turn had reversed the January 2020 dismissal order.

¶ 116   Defendant points out that his combined motion to dismiss and for summary judgment was filed in October 2019, "long before Plaintiff's motion to dismiss." He suggests that the trial court was required to order briefing and "hear Defendant's [October 2020] motion to reconsider because it was part of the procedural progression of" his combined motion "that had been filed and heard nearly a year prior." Defendant also states that he was prejudiced by the court's decision not to

rule upon his motion to reconsider, because he invested significant time, resources and costs to prepare it.

¶ 117   We recognize that defendant's motion to reconsider the September 2020 order was a potentially dispositive motion, as it sought to reinstate the January 2020 dismissal of the case with prejudice. Nonetheless, defendant's argument is unavailing for a simple reason: its motion to reconsider was *not* filed before plaintiff's motion to dismiss was filed. Thus, the judicial discretion to consider a previously-filed dispositive motion was not at issue. Rather, plaintiff was entitled to voluntary dismissal because it met the threshold requirements of section 2-1009(a).

¶ 118   It is well-settled that a trial court has discretion to consider a previously-filed dispositive motion before deciding a plaintiff's motion for voluntary dismissal. *Morrison*, 191 Ill. 2d at 165 (explaining that "where a previously-filed defense motion could result in a final disposition of the cause of action * * * the court has the discretion to hear and decide that motion before ruling on the plaintiff's motion  for voluntary dismissal."); *Gibellina v. Handley*, 127 Ill. 2d 122, 138 (1989) ("the trial court may hear and decide a motion which has been filed prior to a section 2-1009 when that motion, if favorably ruled on by the court, could result in a final disposition of the case."). That discretion is codified in section 2-1009(b): "The court *may* hear and decide *a motion that has been filed prior to a motion filed* under subsection (a) of this Section when that prior filed motion, if favorably ruled on by the court, could result in a final disposition of the cause." (Emphases added.) 735 ILCS 5/2-1009(b) (West 2020). These authorities make clear that the trial court only has discretion to hear a defense motion that was filed before the section 2-1009 motion. They do not indicate a court has such discretion when a *later-filed* defense motion is pending at the time of voluntary dismissal.

¶ 119   Notwithstanding our prior discussion as to when plaintiff's voluntary dismissal motion was properly *served*, the record is clear as to when it was *filed*: October 20, 2020. Defendant's motion to reconsider was filed the next day, October 21, 2020. Thus, the trial court's discretion to hear a previously-filed defense motion was not implicated. Rather, once the plaintiff met the threshold requirements of section 2-1009(a), it was entitled to voluntary dismissal. See *Morrison*, 191 Ill. 2d at 165 (section 2-1009(a) "confers on plaintiffs an unfettered right to voluntarily dismiss their claims without prejudice, upon proper notice and payment of costs, 'at any time before trial or hearing begins.' ").

¶ 120   In any event, even if defendant's motion to reconsider could be construed as having been "filed" before the voluntary dismissal motion, we would not find an abuse of discretion by the trial court in declining to consider it. An abuse of discretion occurs if the decision is "against the manifest weight of the evidence such that no reasonable person could take the view adopted by the trial court." *Mizell v. Passo*, 147 Ill. 2d 420, 426 (1992). Under the record in this case, we cannot say that no reasonable person could agree with the trial court's decision to grant plaintiff's voluntary dismissal motion, without deciding defendant's motion to reconsider. The record reflects that the trial court was well aware of the issues raised in numerous motions and oral arguments. Defendant does not suggest that its pending motion would raise any new legal arguments. To the contrary, the pending motion sought reconsideration of a prior order granting *another* motion to reconsider. In this context, the trial court's decision was not unreasonable or an abuse of discretion.

¶ 121   We thus reject each of defendant's challenges to the January 14, 2021 voluntary dismissal order.  Finally, we note that defendant does not raise any distinct argument attacking the March

2021 order denying his motion to reconsider the January 14, 2021 voluntary dismissal order, and so we also affirm that order.

¶ 122   CONCLUSION

¶ 123   In summary, we determine we have no jurisdiction to consider defendant's challenge to the September 21, 2020 order. However, we affirm the January 14, 2021 voluntary dismissal pursuant to section 2-1009(a) of the Code (735 ILCS 5/2-1009(a) (West 2020)), as well as the March 9, 2021 denial of defendant's motion to reconsider that order.

¶ 124   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 125   Affirmed.